UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| ARMANI SANCHEZ,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW M. SAUL,<br><br>　　　　　Defendant. | Case No.  18-cv-05184-VKD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 25, 30 |

Plaintiff Armani Sanchez appeals a final decision of the Commissioner of Social Security ("Commissioner")[1] denying his application for child's insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, *et seq.*  The parties have filed cross-motions for summary judgment.

Mr. Sanchez contends that the Commissioner's denial of benefits reflects multiple errors: (1) the Commissioner failed to provide Mr. Sanchez proper notice of the issues to be decided at the administrative hearing; (2) the administrative law judge ("ALJ") erred in evaluating the medical evidence; (3) the ALJ's findings that Mr. Sanchez's impairments do not meet or equal any listed impairments are not supported by substantial evidence; (4) the ALJ failed to provide clear and convincing reasons for discounting Mr. Sanchez's credibility; (5) the ALJ's residual functional capacity ("RFC") finding is not based on substantial evidence; (6) the ALJ's determination that Mr. Sanchez is employable is not supported by substantial evidence; and (7) the ALJ failed to provide germane reasons for rejecting third party statements regarding Mr.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Andrew M. Saul is substituted for his predecessor, Nancy A. Berryhill.

Sanchez's functional capacity.  The Commissioner contends that his decision is supported by substantial evidence and is free from legal error.

The matter was submitted without oral argument.  Upon consideration of the moving and responding papers and the relevant evidence of record, for the reasons set forth below, the Court grants in part and denies in part Mr. Sanchez's motion for summary judgment and grants in part and denies in part the Commissioner's cross-motion for summary judgment.[2]

## I.  BACKGROUND

Mr. Sanchez was born in 1991 and is 28 years old.  He completed the 12th grade, but did not receive a high school diploma and has never worked.  AR[3] 50, 251, 382.  He participated in Civicorps, a job training program, but was asked to leave the program twice for behavioral issues in 2010 and 2011.  AR 401.

On June 26, 2014, he applied for child's insurance benefits under Title II of the Act, alleging disability due to mental impairments, including bipolar disorder and learning delays.  AR 219.  His application was denied initially and on review.  An ALJ held a hearing and subsequently issued an unfavorable decision on September 21, 2017.  AR 15-30.  The ALJ found that as of April 1, 2000, the alleged onset date, Mr. Sanchez had not attained age 22[4] and had not engaged in substantial gainful activity.  AR 17.  The ALJ further found that prior to reaching age 22, Mr. Sanchez had the following severe impairments:  bipolar disorder and learning disability.  *Id*.  However, the ALJ concluded that Mr. Sanchez did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the Commissioner's regulations.  AR 18.  The ALJ then determined that Mr. Sanchez has the RFC to perform a full range of work at all exertional levels, with the sole non-exertional limitation that Mr. Sanchez can only occasionally respond appropriately to supervisors, coworkers and the

---

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 7, 15.

[3] "AR" refers to the certified administrative record lodged with the Court.  Dkt. No. 21.

[4] Child's insurance benefits are available to the children of persons who are deceased or who are drawing Social Security disability or retirement benefits, subject to certain conditions including that the child became disabled before age 22.  *See* 42 U.S.C.A. § 402(d).

1   public.  AR 21.  The ALJ concluded that Mr. Sanchez can perform work that exists in significant

2   numbers in the national economy (namely as a hand packer, assembler, and machine feeder) and

3   has not been disabled, as defined by the Act, at any time before he attained age 22.  AR 30.

4       The Appeals Council denied Mr. Sanchez's request for review of the ALJ's decision.

5   AR 1-3.  Mr. Sanchez then filed the present action seeking judicial review of the decision denying

6   his application for benefits.

7   **II.     STANDARD OF REVIEW**

8       Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's

9   decision to deny benefits.  The Commissioner's decision will be disturbed only if it is not

10  supported by substantial evidence or if it is based upon the application of improper legal

11  standards.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Moncada v.*

12  *Chater*, 60 F.3d 521, 523 (9th Cir. 1995).  In this context, the term "substantial evidence" means

13  "more than a mere scintilla but less than a preponderance—it is such relevant evidence that a

14  reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523;

15  see also *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).  When determining whether

16  substantial evidence exists to support the Commissioner's decision, the Court examines the

17  administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966

18  F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Where evidence exists to

19  support more than one rational interpretation, the Court must defer to the decision of the

20  Commissioner.  *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

21  **III.    DISCUSSION**

22      **A.    Due Process**

23      Mr. Sanchez argues that his right to due process was violated because he was not given

24  proper notice of the issues to be decided at the administrative hearing.  "The fundamental

25  requirement of due process is the opportunity to be heard 'at a meaningful time and in a

26  meaningful manner.'"  *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v.*

27  *Manzo*, 380 U.S. 545, 552 (1965)).  In the Social Security context, a notice of hearing before an

28  ALJ must provide a claimant with certain information, including "[t]he specific issues to be

3

decided in [the claimant's] case." 20 C.F.R. § 404.938.

Here, the ALJ sent Mr. Sanchez a notice of hearing that advised:

**Issues I Will Consider**

The hearing concerns your application of June 26, 2014, for a Period of Disability and Disability Insurance Benefits under sections 216(i) and 223(a) of the Social Security Act (the Act). I will consider whether you are disabled under section 216(i) and 223(d) of the Act.

AR 178. The parties do not dispute that this notice refers to Mr. Sanchez's June 26, 2014 application for Title II child's insurance benefits. However, Mr. Sanchez contends that the notice of hearing is insufficient because the record contains references to other benefits applications and proceedings, namely a continuing disability review ("CDR"),[5] the results of which he says are unclear. Mr. Sanchez points out that in September 2004, when he was 13 years old, he applied for disabled child Supplemental Security Income ("SSI") under Title XVI of the Act. AR 100. The Social Security Administration ("SSA") approved that application in January 2005, and Mr. Sanchez began receiving SSI benefits around March 2005. *Id*. While the record indicates that the SSA conducted a CDR concerning his Title XVI SSI benefits sometime in 2014 (AR 234), it is unclear what happened with respect to that process. Mr. Sanchez says that the second mention of a CDR is a note in the transmittal sheet regarding the initial denial of his June 26, 2014 Title II application (the application presently at issue) which reads: "Conversion to CDB processed with CDR/Age 18 redetermination."[6] AR 86. There is no explanation in the record as to what this notation means, and the Commissioner offers none in his motion papers.[7] Mr. Sanchez contends that the notation is especially confusing because he turned 18 in 2009—the same year he

---

[5] The Commissioner is statutorily required to periodically review whether claimants who have been granted disability benefits remain disabled. *See* 42 U.S.C. § 421(i)(1); 20 C.F.R. §§ 404.1594, 416.989.

[6] Although it is unclear what this notation means, the Court assumes that the notation refers, in part, to the regulatory process in which the SSA must redetermine a claimant's eligibility for SSI disability benefits if the claimant (1) is at least 18 years old; (2) became eligible for SSI disability benefits before age 18; and (3) was eligible for such benefits for the month before the claimant attained age 18. 20 C.F.R. § 416.987.

[7] Nor did the Commissioner provide a Statement of the Administrative Record as ordered by the Court. Dkt. No. 16.

previously applied for, and was denied, Title II benefits.  AR 77, 247.  Additionally, Mr. Sanchez points out that the ALJ remarked at the administrative hearing that the present matter is "an appeal of a continuing disability review" (AR 42), but the ALJ's decision makes no mention of any CDR.

Although neither side has cited any analogous authority, another court in this district addressed a similar issue in *Williams v. Comm'r of Soc. Sec.*, No. 17-cv-07164-JD, 2019 WL 5102574 (N.D. Cal. Oct. 11, 2019).  In *Williams*, the SSA granted claimant Marshaun Williams SSI benefits for bipolar disorder in 2003 when he was 19 years old.  Those benefits were later terminated during Mr. Williams's period of incarceration.  In a subsequent application for benefits, filed in 2014 when Mr. Williams was 30 years old, he expressly requested Title XVI SSI benefits, but his application seemingly also referred broadly to Title II child's insurance benefits.  *Id*. at *1. In denying his application, the SSA sent Mr. Williams a notice of disapproved claim that referred to both child's insurance benefits and SSI benefits.  *Id*.  Mr. Willliams's subsequent request for reconsideration seemed to limit his claim to SSI benefits; and, the SSA denied that request, this time referencing only the rules for SSI disability payments and omitting any reference to child's insurance benefits.  Nevertheless, in his request for an administrative hearing, Mr. Williams argued that the SSA's reconsideration decision was at odds with the first notice of denial that seemed to be "based on [his] condition not being disabling before age 22."[8]  *Id*. at *3.  The ALJ nonetheless issued a notice of hearing advising that a hearing would be held regarding Mr. Williams's application for SSI benefits.  *Id*. at *2.  Confusion repeatedly arose during the hearing because the ALJ focused on the time period between the filing of Mr. Williams's application in 2014 and the hearing in 2016, whereas Mr. Williams seemed to believe the relevant question was whether his condition was disabling before he reached age 22.  *Id*.  The ALJ issued an unfavorable decision, concluding that Mr. Williams was not disabled from the date his application was filed in 2014.

---

[8] As noted above, establishing disability before age 22 is important for eligibility for child's insurance benefits.  *See* 42 U.S.C.A. § 402(d).  However, when a claimant applies for SSI, the SSA generally considers the time period from the date of the claimant's application to the date of the ALJ's decision.  *See* 20 C.F.R. § 416.335 (stating that the earliest date an SSI claimant may receive benefits is the month following the month in which the SSI application was filed).

United States District Court
Northern District of California

In considering whether Mr. Williams's due process rights had been violated, the court noted that although Mr. Williams's application for benefits and the SSA's initial notice of disapproved claims indicated that both child's insurance benefits and SSI benefits were at issue, "a remand would not necessarily be warranted" because Mr. Williams's request for reconsideration seemed to abandon his claim for child's insurance benefits and instead focused solely on his claim for SSI. *Id*. at *3. Nevertheless, the court concluded that remand was required due to the apparent confusion over the relevant time period applicable to Mr. Williams's claims, i.e., whether his condition was disabling before he reached age 22, or from the time he filed his 2014 application at age 30. Here, the court noted that although Mr. Williams's application expressly requested SSI benefits, the SSA denied that application for the sole reason that it determined that his condition was not disabling before age 22. Thus, Mr. Williams "rightfully proceeded with the understanding that his SSI benefits too were denied because he had failed to show his condition was disabling before age 22," and "[n]o subsequent communication from the SSA clearly communicated that there was a different time period at issue for his claim for SSI benefits." *Id*. Additionally, because Mr. Williams expressly raised this issue in his request for hearing, and the ALJ failed to address it, the court concluded that Mr. Williams did not receive constitutionally sufficient notice of the issues to be decided, and that the ALJ failed to fully develop the record. *Id*. at *3-*4.

In the present matter, there are references to a CDR process, the results of which are not explained. The ALJ also did remark at the start of the administrative hearing that this case concerns an appeal of a CDR, although his written decision makes no mention of any CDR. Unlike *Williams*, however, the administrative record reveals no apparent confusion or objection by Mr. Sanchez about the issues to be addressed, or the relevant standards to be applied; and, other than to question what the references to a CDR process might mean, Mr. Sanchez identifies no palpable prejudice he has suffered as a result.

First, Mr. Sanchez's June 2014 application for benefits clearly states that he is seeking child's disability benefits. AR 219. Although that application also says that Mr. Sanchez planned to file an application for SSI benefits, it is unclear whether he did so, and Mr. Sanchez does not say whether he filed another such application.

6

Second, notwithstanding the unexplained notation in the SSA's initial denial of Mr. Sanchez's application for child's insurance benefits (AR 86), there is no indication that he was confused about what benefits were being denied or why. As Mr. Sanchez points out, the transmittal sheet for the SSA's denial of benefits contains the unexplained note: "CEF exclusion – Conversion to CDB processed with CDR/Age 18 redetermination." AR 86. The SSA's notice of disapproved claim, however, states that Mr. Sanchez's claim for child's insurance benefits was denied because the agency determined that his "condition was not disabling before age 22." AR 126. The notice contains no reference to any request for SSI benefits or to any CDR or Age 18 redetermination.

Similarly, there is no indication at the reconsideration level of the administrative proceedings that Mr. Sanchez was confused about what benefits were being denied and why. Here, the record contains two different requests for reconsideration:

- The request for reconsideration cited by Mr. Sanchez refers to SSI benefits, is dated January 2, 2015, and bears the name and contact information of his mother, Kiva Brazington.[9] AR 131-34. The document says that Mr. Sanchez requests reconsideration and a hearing regarding "disability cessation"; disagrees with the determination on his claim for SSI benefits; and notes that he has additional evidence and "wishes to appear at the disability hearing." *Id.*

- The other request for reconsideration is also dated January 2, 2015, albeit the top of the document bears the date "January 27, 2015." AR 135. This request for reconsideration contains the name and contact information for Maisha Savoy, who previously was Mr. Sanchez's designated payee for his benefits. The request states that Mr. Sanchez disagreed with the determination on his claim for "child benefits because [he is] disabled and cannot work"; that Mr. Sanchez has no additional evidence to submit; and that he wants a "case review." *Id.*

---

[9] In the record, Mr. Sanchez's mother is sometimes referred to as "Kiva Brazington Verduzco" and sometimes as "Kiva Brazington." Because Mr. Sanchez refers to her simply as Kiva Brazington, the Court will do the same.

1  As noted by Mr. Sanchez in papers he submitted during the administrative proceedings, an

2 Age 18 redetermination hearing apparently was held in November 2015. AR 210; *see also* AR

3 137-48. In a December 10, 2015 notice of reconsideration, which appears to be the only notice of

4 reconsideration in the record, the SSA affirmed that its "first decision was correct" and that Mr.

5 Sanchez's "condition was not disabling before age 22." AR 149-54. The notice further advised

6 Mr. Sanchez of his right to request a hearing before an ALJ. Mr. Sanchez apparently did so on

7 December 28, 2015. AR 155.

8  As discussed above, the March 8, 2017 notice of hearing states that the ALJ would address

9 Mr. Sanchez's June 26, 2014 Title II application for child's insurance benefits. AR 178.

10 Notwithstanding the ALJ's remark at the start of the hearing about "an appeal of a [CDR]," in

11 advising Mr. Sanchez of the issues to be decided, the ALJ also stated:

> Okay. Mr. Sanchez, the issue in this case is whether you are disabled.
> To be disabled under the [SSA], you must have an impairment that
> has lasted, or can be expected to last for a continuous period of at least
> 12 months, or be expected to result in death. The impairment must
> be severe enough to prevent you from doing any kind of gainful
> activity since the date you said you could not work.

AR 46-47. While Mr. Sanchez correctly notes that the ALJ's decision does not mention any CDR,

there also is no indication that Mr. Sanchez believed that a CDR, or anything other than his June

2014 Title II application for child's insurance benefits, was at issue. For example, in his papers

filed with this Court, Mr. Sanchez acknowledges that to determine whether a claimant is disabled,

federal regulations require the application of a five-step sequential analysis, used by the ALJ in

this matter. *See* Dkt. No. 25 at 10; *see also* 20 C.F.R. § 404.1520.[10] Additionally, in his pre-

hearing brief submitted to the ALJ by Mr. Sanchez's attorney, Mr. Sanchez presented arguments

about his June 2014 Title II claim for child's benefits under the five-step sequential analysis used

by the ALJ in reaching his decision. AR 368-73. Moreover, in his request for a review by the

Appeals Council, Mr. Sanchez acknowledged that further development of the record was

---

[10] By contrast, and although neither side has said so, in a CDR process to determine whether a claimant continues to be disabled and entitled to benefits, the Commissioner apparently applies a different sequential analysis. *See* 20 C.F.R. §§ 404.1594; 416.994.

1 unnecessary and that there were no outstanding issues that needed to be resolved.  AR 215.

2   On this record, the Court cannot conclude that the Commissioner failed to provide Mr.

3 Sanchez with constitutionally sufficient notice of the issues to be decided at the administrative

4 hearing.  To the extent Mr. Sanchez may be contending that the Commissioner's decision should

5 have addressed matters beyond his Title II claim for child's insurance benefits, he has not

6 persuasively demonstrated that that is the case.  The Court finds no error here.

7   **B. Evaluation of Medical Evidence[11]**

8   The record contains the reports of three psychologists who each examined Mr. Sanchez:

9 Cecilia M. Hardey, Ph.D., Maria Kerosky, Ph.D., and Faith Tanner, Psy.D.  Additionally, two

10 nonexamining state agency physicians, Dr. V. Meenakshi, M.D. and Dr. D. Lucila, M.D., provided

11 reports based on their review of Mr. Sanchez's records.  Mr. Sanchez contends that the ALJ erred

12 by failing to weigh Dr. Hardey's opinion, ignoring the opinions of Drs. Meenakshi and Lucila,

13 rejecting Dr. Kerosky's opinion, and ignoring some of Dr. Tanner's findings.  Additionally, Mr.

14 Sanchez argues that the ALJ should have granted his request to have a medical expert testify at the

15 administrative hearing.

16   **1. Examining Psychologist Cecilia M. Hardey, Ph.D.**

17   In September 2009, when Mr. Sanchez was about 18 and a half years old, Dr. Hardey

18 conducted a psychological evaluation arranged by the state agency.  AR 395-400.  According to

19 Dr. Hardey's report, Mr. Sanchez's scores on the Wechsler Adult Intelligence Scale-III test placed

20 him within the borderline range of intellectual functioning, with a full scale IQ of 74.  She further

21 noted that results on the Wechsler Memory Scale-III test indicated that Mr. Sanchez's Immediate

22 Auditory Memory was in the mildly impaired range.  Dr. Hardey found that Mr. Sanchez's score

23 on the Bender Visual-Motor Gestalt Test-II placed him in the borderline to mildly impaired range.

24

25 [11] The Commissioner's rules and regulations regarding the evaluation of medical evidence were
revised in March 2017.  The Commissioner says that those new rules apply in the present matter

26 because they were in effect *at the time the ALJ issued his decision* in September 2017.  Dkt. No.
30 at ECF 8 n.1.  That assertion appears to be incorrect.  The new regulation itself states that the

27 new rules apply to *claims* filed on or after March 27, 2017.  *See* 20 C.F.R. § 404.1520c ("For
claims filed . . . on or after March 27, 2017, the rules in this section apply.  For claims filed before

28 March 27, 2017, the rules in § 404.1527 apply.").  Because Mr. Sanchez's claim was filed before
March 27, 2017, the Court applies the rules then in effect under 20 C.F.R. § 404.1527.

AR 397-98.

Based on her review of Mr. Sanchez's records and her examination, Dr. Hardey concluded that he has "some deficits, particularly in the areas of Auditory Processing and Memory." AR 398. With respect to Mr. Sanchez's work-related abilities, Dr. Hardey found that he is mildly impaired in his ability to "Follow/remember simple visual instructions" and has a "Moderate to Severe" impairment in his ability to "Follow/remember complex/detailed auditory instructions." AR 399. She otherwise found that Mr. Sanchez has mostly "Mild to Moderate" or "Moderate" levels of impairment in his work-related abilities. *Id*. Dr. Hardey opined that Mr. Sanchez "needs additional training and perhaps vocational courses including job readiness in order for him to be able to function in the world of work," adding that "[h]e appears to be somewhat developmentally and emotionally delayed and would probably find difficulty functioning in an adult work situation." AR 398.

There is no dispute that the ALJ considered Dr. Hardey's report. Indeed, although he never referred to Dr. Hardey by name, the ALJ referenced her report by exhibit number (i.e., Exhibit 2F) at multiple places in his decision. For example, the ALJ noted Dr. Hardey's test results; Mr. Sanchez's activities of daily living as reported to Dr. Hardey; and Dr. Hardey's general observations that while Mr. Sanchez appeared immature, he was cooperative during her examination and had adequate hygiene. *See* AR 18-21, 25-29. Nevertheless, Mr. Sanchez contends that the ALJ erred by failing to explicitly accept or reject Dr. Hardey's opinion. The Commissioner acknowledges that the ALJ did not state the specific weight he gave to Dr. Hardey's report, but contends that it was not necessary for the ALJ to do so, or alternatively, that the ALJ's failure to do so was harmless.

"Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). Here, the Commissioner argues that the ALJ did not need to state the specific weight he gave to Dr. Hardey's report because the ALJ gave great weight to the opinion of examining psychologist Dr.

Faith Tanner[12] and "found [Dr. Hardey's] report consistent with or exceeding Dr. Tanner's findings . . .." Dkt. No. 30 at ECF 12. The ALJ, however, made no such finding. What he said is that Dr. Tanner's opinion is "consistent with [Mr. Sanchez's] reported wide array of activities of daily living" as noted in Dr. Hardey's report, and that Dr. Tanner's opinion "explains his other low cognitive test scores" found by Dr. Hardey and others.[13] AR 27. While the Commissioner suggests that the Court may infer that the ALJ found Dr. Hardey's opinion to be consistent with Dr. Tanner's opinion, the Court properly may do so only "if those inferences are there to be drawn." *Magallanes v. Brown*, 881 F.2d 747, 755 (9th Cir. 1989). Nothing in the ALJ's decision indicates that that is what he did, and the Court "reviews only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Accordingly, the ALJ erred in failing to state what weight he gave to Dr. Hardey's opinion.

The Commissioner nonetheless contends the error is harmless, primarily relying on *Rogal v. Colvin*, 590 Fed. App'x 667 (9th Cir. 2014). In *Rogal*, although the ALJ did not expressly state what weight she assigned to a physician's opinion, the error was found harmless because the ALJ gave significant weight to the opinion of another physician who, in turn, relied upon the opinion of the first one. *Id*. at 670-71. Here, unlike *Rogal*, there is no indication that Dr. Tanner relied on Dr. Hardey's report. Moreover, "[a]n error is harmless only if it is inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (quotations and citations omitted); *see also Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006) (same). Mr. Sanchez notes, and the Commissioner does not deny, that Dr. Hardey's report is the only psychological evaluation in the record that was performed before Mr. Sanchez turned 22. On this record the Court cannot conclude, as the Commissioner urges, that the error was

---

[12] Mr. Sanchez's arguments concerning the ALJ's evaluation of Dr. Tanner's report are addressed below.

[13] As discussed below, the ALJ's assertion that Dr. Tanner explained Mr. Sanchez's "low cognitive test scores" is not an accurate reflection of Dr. Tanner's opinion.

inconsequential to the ultimate determination that Mr. Sanchez is not disabled.

Accordingly, the ALJ erred in failing to state what weight he gave to Dr. Hardey's opinion, and the error is not harmless.

### 2. Nonexamining State Agency Consultants

Mr. Sanchez argues that the ALJ erred by failing to weigh, or to even mention, the opinions of the nonexamining State agency psychological consultants, Dr. V. Meenakshi, M.D. and Dr. D. Lucila, M.D. The Commissioner acknowledges that the ALJ did not discuss these opinions, but maintains that any error is harmless.

In September 2014, Dr. Meenakshi issued a report finding that Mr. Sanchez has severe medically determinable affective and learning disorders. AR 80. While Dr. Meenakshi's report notes that Mr. Sanchez has no social or adaptation limitations and was "Not significantly limited" in a number of areas, the report states that he has moderate limitations in his abilities to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods. AR 82-83. Ultimately, Dr. Meenakshi concluded that Mr. Sanchez can work and is not disabled. AR 84.

In April 2015, Dr. Lucila reviewed Mr. Sanchez's records and found that he has severe medically determinable impairments for intellectual disability and affective disorders. AR 93. The report further notes that Mr. Sanchez has no social interaction limitations. While Dr. Lucila found that he is "Not significantly limited" in a number of areas, the report states that Mr. Sanchez has moderate limitations in his abilities to understand and remember detailed instructions; carry out detailed instructions; maintain concentration and attention for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods. AR 96. Additionally, Dr. Lucila noted some adaptation limitations, including moderate limitations in Mr. Sanchez's ability to respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others. AR 96-97. Ultimately, Dr. Lucila also concluded that Mr.

Sanchez can work and is not disabled.  AR 97-98.

As noted above, it is undisputed that the ALJ did not discuss the opinions of Drs. Meenakshi and Lucila.  Mr. Sanchez notes, in particular, the moderate limitations identified in their respective reports.  The Commissioner contends that any error in the failure to address these opinions is harmless, arguing that the reports and their findings are irrelevant to the ALJ's findings and conclusions.  Here, the Commissioner points out that Drs. Meenakshi and Lucila did not have before them the November 2016 report of Dr. Tanner, which the ALJ relied upon and assigned great weight.  AR 27.  The Commissioner further argues that because Drs. Meenakshi and Lucila are nonexamining physicians, their opinions cannot constitute substantial evidence justifying the rejection of Dr. Tanner's opinion.

The Commissioner's regulations provide that, "[r]egardless of [their] source," the SSA "will evaluate every medical opinion [it] receive[s].  20 C.F.R. § 404.1527(c).  While the Commissioner offers various reasons why the State agency physicians' reports are irrelevant, and hence inconsequential, to the ALJ's ultimate determination of nondisability, none of those reasons were articulated by the ALJ.  Although an agency will not be faulted "merely for explaining its decision with less than ideal clarity," the agency must still "set forth the reasoning behind its decisions in a way that allows for meaningful review."  *Brown-Hunter*, 806 F.3d at 492 (quotations and citations omitted).  Here, the ALJ did not mention Dr. Meenakshi's or Dr. Lucila's findings at all, and the Court cannot conclude with any confidence that the error was harmless.  *See id.* ("A reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless."); *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) ("In the circumstances of this case, where the ALJ did not even mention Dr. Betat's opinion that Marsh's chronic bursitis rendered her 'pretty much nonfunctional,' we cannot confidently conclude that the error was harmless.") (citation omitted).

The ALJ erred in failing to address the opinions of Drs. Meenakshi and Lucila, and the error was not harmless.

### 3.    Examining Psychologist Maria Kerosky, Ph.D.

At the request of the State agency, psychologist Maria Kerosky, Ph.D. evaluated Mr.

13

Sanchez and prepared a report dated March 25, 2015, when Mr. Sanchez was 23 years old. AR 464-470. During her examination, Dr. Kerosky administered several tests, including the Wechsler Adult Intelligence Scale IV and the Wechsler Memory Scale IV. Mr. Sanchez's test results indicated a full scale IQ of 58, and Dr. Kerosky found that his scores demonstrate that he "functions intellectually in the extremely low range." AR 467, 469. With respect to Mr. Sanchez's emotional functioning, Dr. Kerosky observed that he "presented as a restless, distractible man" and that "[h]is frustration tolerance was low." AR 469. Based on his clinical presentation and reported history, Dr. Kerosky stated that Mr. Sanchez appears to meet the DSM-V criteria for a diagnosis of depressive disorder, with a need to rule out unspecified psychotic disorder. AR 468. She gave a "[g]uarded" prognosis and recommended comprehensive mental health services. AR 469. As for Mr. Sanchez's ability to perform in the workplace, Dr. Kerosky found that he has mild to moderate difficulty maintaining adequate pace and persistence to perform simple repetitive tasks, and moderate impairment in his ability to interact appropriately with coworkers, supervisors, and the public on a regular basis. She further noted that Mr. Sanchez has moderate to marked difficulty following complex/detailed instructions; maintaining adequate sustained attention/concentration during routine workday; and adapting to changes in job routine. She found marked impairments in Mr. Sanchez's ability to perform complex tasks; adapt to stressors in workplace setting; and complete normal workday/workweek without interruption related to psychiatric condition. AR 469-470.

The ALJ gave four reasons for assigning Dr. Kerosky's opinion little weight: (1) "she was only able to examine [Mr. Sanchez] once and was not able to review the medical evidence at the hearing level"; (2) while Mr. Sanchez had "varied academic performance, IEP [individualized education program] participation, and behavioral problems a[t] Civicorps, . . . teachers still considered him bright and capable"; (3) "a Civicorp case counselor mentioned behavioral problems but did not mention intellectual difficulties"; and (4) "Dr. Tanner gave a thorough explanation for [Mr. Sanchez]'s low cognitive test scores, indicating his performance was more due to other mental illness and being used to others doing things for him rather than an intellectual disability." AR 28.

14

Mr. Sanchez contends that the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, to discredit Dr. Kerosky's opinion. "As is the case with the opinion of a treating physician, the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)); *see also Garrison*, 759 F.3d at 1012 ("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'") (quoting *Orn*, 495 F.3d at 633)). Here, the parties seem to agree that Dr. Tanner's assessment of Mr. Sanchez's work abilities is less restrictive than that made by Dr. Kerosky and that the ALJ must provide specific and legitimate reasons, supported by substantial evidence, for giving Dr. Kerosky's opinion little weight.

Mr. Sanchez correctly notes that the ALJ's first reason for rejecting Dr. Kerosky's opinion—i.e., that "she was only able to examine [Mr. Sanchez] once and was not able to review the medical evidence at the hearing level"—applies equally to all three of the psychologists who examined him. The Court agrees that this is not a legitimate reason to reject Dr. Kerosky's opinion. In any event, the Commissioner does not address this argument and thus, appears to concede this point.

In discounting Dr. Kerosky's opinion, the ALJ noted that "Dr. Tanner gave a thorough explanation for [Mr. Sanchez]'s low cognitive test scores, indicating that his performance was more due to other mental illness and being used to others doing things for him rather than an intellectual disability." AR 28. In the relevant portion of her report, however, Dr. Tanner did not say that Mr. Sanchez's *low cognitive test scores* were due to other mental illness, as opposed to an intellectual disability. Rather, she was explaining why she believed Mr. Sanchez's *adaptive and*

15

*academic test scores* were lower than his cognitive test scores. AR 486. As for the ALJ's remaining reasons for discounting Dr. Kerosky's opinion, Mr. Sanchez argues that observations from his teachers in 2009 and from a Civicorps counselor in 2010 and 2011 are not dispositive of Dr. Kerosky's findings regarding Mr. Sanchez's psychological evaluation in 2015. While the Commissioner correctly notes that the ALJ is the final arbiter with respect to resolving ambiguities or conflicts in the evidence, even viewing the record as a whole, the Court finds that the ALJ did not provide sufficient specific and legitimate reasons for rejecting Dr. Kerosky's opinion.

### 4.    Examining Psychologist Faith Tanner, Psy.D.

Dr. Tanner evaluated Mr. Sanchez in November 2016 when he was 25 years old. Although she did not conduct a psychiatric review, Dr. Tanner concurred with a prior diagnosis of bipolar disorder. Additionally, she found that Mr. Sanchez has mild intellectual disability, as well as deficits in several areas of adaptive functioning, and further opined that "he was likely functioning at this same level prior to the age of 18." AR 485-486. The ALJ gave Dr. Tanner's opinion great weight, noting her conclusion that "while he has deficits with money management and time telling, he only has a mild intellectual disability considering his varied cognitive test scores and presentation." AR 27. Further noting Dr. Tanner's recommendations for socialization opportunities such as an art group, treatment for his bipolar disorder, and supportive employment, the ALJ stated that Dr. Tanner's assessment is consistent with Mr. Sanchez's education records and reported activities of daily living, and "further explains his other low cognitive test[] scores (Exs. 2F, 7F), but otherwise lack of documented observed mental abnormalities by treating medical providers (Exs. 4F , 12F)." AR 27.

The Commissioner argues that the ALJ provided sufficient reasons supported by the record for giving Dr. Tanner's opinion great weight. Mr. Sanchez, however, does not contend that the ALJ was wrong to assign great weight to Dr. Tanner's opinion. Rather, he argues that the ALJ failed to "fully credit" Dr. Tanner's opinion by highlighting her conclusion that he has a mild intellectual disability, while overlooking other findings that Mr. Sanchez says are indicative of significant functional limitations. Dkt. No. 31 at ECF 6.

An ALJ may not cherry-pick portions of the medical record and selectively rely on those

that are consistent with his findings. *See Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ may not selectively rely on some entries and ignore others "that indicate[] continued, severe impairment"). Here, Mr. Sanchez argues that the ALJ ignored Dr. Tanner's findings regarding his inability to read a clock, as well as her observation that Mr. Sanchez "did not try to add coins stating that he could not do so." AR 483. To the contrary, in crediting Dr. Tanner's opinion, the ALJ did note her conclusions that Mr. Sanchez has deficits in money management and time telling. AR 27. Moreover, elsewhere in his decision the ALJ acknowledged that Mr. Sanchez did not attempt some tasks during Dr. Tanner's academic testing, and correctly noted Dr. Tanner's observation that "[Mr. Sanchez] seemed to know that he could not perform the tasks without significant effort and likely could have performed some of the tasks but did not do so since others do it for him." AR 25, 481.

Mr. Sanchez nonetheless argues that the ALJ failed to consider other of Dr. Tanner's findings based on her academic and adaptive testing, including that Mr. Sanchez did not know the sign for poison and is unable to talk about realistic goals; could not distinguish between exaggerated and truthful claims; could not follow verbal directions to nearby places; does not carry identification since he would lose it; is unable to use a map; is unable to write his complete address; does not follow a schedule; does not write notes or emails; does not use lists or reminders; does not do a good job when washing clothes or dishes, putting things away or keeping his room clean; does not dry clothes well, fold clothing or clear the table after eating; does not pay bills; does not take medication independently; does not follow rules when playing games; does not wait for his turn; has difficulty focusing for 15 minutes on an activity and working independently; does not avoid harmful situations; does not complete household routines in a reasonable amount of time; is easily discouraged; cannot control his anger; does not say please; and does not show respect for authority. Dkt. No. 25 at ECF 14-15; AR 483-85. Additionally, Mr. Sanchez says that the ALJ erred by failing to mention that Mr. Sanchez was accompanied by his girlfriend during portions of Dr. Tanner's examination and that Dr. Tanner noted that Mr. Sanchez "was likely functioning at this same level prior to the age of 18." AR 485-86.

Although the ALJ did not expressly mention these specific findings, he did acknowledge

United States District Court
Northern District of California

that Mr. Sanchez's academic testing scores "were well below average and lower extreme in arithmetic," and that his general adaptive composite score "was extremely low." AR 25. Additionally, in this portion of his decision, the ALJ correctly noted that Dr. Tanner "only diagnosed [Mr. Sanchez] with a mild intellectual disability and reasoned that [Mr. Sanchez's] adaptive and academic scores were lower than those obtained on other tests due to mental illness and his often having others doing things for him." AR 25, 486. To the extent Mr. Sanchez disagrees that is a proper basis for discounting the severity of his adaptive and academic functioning, the ALJ's observation is supported by Dr. Tanner's report. The ALJ did not err by selectively relying on portions of Dr. Tanner's report to the exclusion of others.

### 5. Mr. Sanchez's Request for a Medical Expert

Mr. Sanchez requested that the ALJ call a medical expert to testify at the administrative hearing, noting that "[o]ne of [Mr. Sanchez's] arguments at the hearing will be that his impairments meet or medically equal the requirements of Listing 12.05 and Listing 12.04." AR 356. The ALJ did not call a medical expert to testify at the hearing, and Mr. Sanchez now contends that the ALJ erred in failing to receive such testimony. Mr. Sanchez's arguments, however, are not tied to the issue of medical equivalence.[14] Rather, Mr. Sanchez contends that, in view of the ALJ's evaluation of the medical source statements discussed above, the ALJ improperly substituted his own judgment for those of the medical experts.

An ALJ's decision regarding whether a medical expert is necessary is discretionary. *See* 20 C.F.R. § 404.1527(e)(2)(iii) (an ALJ "may also ask for and consider opinions from medical experts on the nature and severity of your impairment(s) and on whether your impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart."). An ALJ has a duty to fully and fairly develop the record, and "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). While the Court concludes that

---

[14] Mr. Sanchez's arguments regarding the ALJ's medical equivalence findings are discussed below.

18

the ALJ did not properly evaluate all of the medical source statements of record, it also finds no basis for Mr. Sanchez's argument that the ALJ improperly substituted his own medical judgment for that of a medical expert. Accordingly, the ALJ did not err in failing to call a medical expert to testify at the administrative hearing.

### C.     The ALJ's Findings re Medical Equivalence

At step three of the sequential analysis, the ALJ found that "[t]he severity of [Mr. Sanchez]'s mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.05, 12.08, and 12.11"[15] in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 18. In making that finding, the ALJ considered whether Mr. Sanchez's impairments satisfy the "paragraph B"[16] criteria of each listed impairment. Mr. Sanchez contends that the ALJ ignored evidence indicating that his functional impairments are more limited than as found by the ALJ. He also argues that that ALJ erred by failing to consider the combined effects of his bipolar disorder and learning disability.

"An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). "A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Id.* "[I]n determining whether a claimant equals a listing under step three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). Nevertheless, an ALJ does not err by failing to address whether the claimant's combination of impairments medically equals a listing where the claimant

United States District Court
Northern District of California

---

[15] The listings for mental disorders are arranged by categories. Listing 12.04 concerns depressive, bipolar and related disorders; listing 12.05 pertains to intellectual disorder; listing 12.08 addresses personality and impulse-control disorders; and listing 12.11 concerns neurodevelopmental disorders.

[16] Listing 12.04 has three paragraphs, designated A, B, and C; a claimant's mental disorder must satisfy the requirements of both paragraphs A and B or the requirements of paragraphs A and C. Listings 12.08 and 12.11 have two paragraphs, designated A and B, and a claimant's mental disorder must satisfy the requirements of both paragraphs. Listing 12.05 has two paragraphs, designated A and B, which are unique to that listing; a claimant's mental disorder must satisfy the requirements of either paragraph A or B. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A.2. & A.3.

offers no plausible theory as to how her impairments equal a listed impairment. *Lewis*, 236 F.3d at 514.

Mr. Sanchez argues in conclusory fashion that the ALJ erred by failing to consider the combined effects of his bipolar disorder and his intellectual disorder in determining that he did not meet or equal any listed impairment. The ALJ apparently considered statements and allegations in Mr. Sanchez's testimony, third party statements, the examining psychologists' respective reports, as well as Mr. Sanchez's education, Civicorps, and medical treatment records concerning his intellectual, behavioral, and emotional issues. AR 18-19. To the extent Mr. Sanchez claims that the ALJ erred by failing to "discuss[] the specific effects of either [Mr. Sanchez]'s Bipolar disorder or learning disability" (Dkt. No. 25 at ECF 18-19), Mr. Sanchez does not further elaborate as to how or why that is so. *Lewis*, 236 F.3d at 514; *see also Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.").

Even so, for the reasons discussed below, the Court agrees with Mr. Sanchez that the ALJ erred in his analysis of the paragraph B criteria for the relevant listings.

### 1. Listings 12.04, 12.08 and 12.11

For each of these listings, "paragraph B" sets out criteria used to evaluate how a mental disorder limits a claimant's functioning in four areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00E. To satisfy these criteria, a claimant's "mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." *Id.* § 12.00A.2.b. Here, the ALJ found that Mr. Sanchez has moderate limitations with respect to the second criterion regarding interaction with others, and mild limitations for the remaining criteria. AR 18-19. Mr. Sanchez argues that the ALJ ignored evidence that he says demonstrates marked limitations in all four of the paragraph B criteria.

In some respects, the ALJ's analysis is not as narrow as Mr. Sanchez contends. Indeed, the

ALJ's decision indicates that he considered Mr. Sanchez's testimony, third party statements, the examining psychologists' respective reports, as well as Mr. Sanchez's education, Civicorps, and medical treatment records. AR 19. For example, the ALJ noted Mr. Sanchez's allegations that he has difficulty with anger, frustration, hitting himself, punching walls, and getting along with others. He also considered Civicorps records citing Mr. Sanchez's behavioral problems getting along with others and with authority figures. The ALJ correctly observed that Mr. Sanchez's education records indicated that inappropriate and immature behavior were "very rare occurrences," and that Mr. Sanchez was usually well-behaved and an active participant in class. AR 19, 378-379. Additionally, while Mr. Sanchez points out that he used an expletive during Dr. Tanner's evaluation, the ALJ also noted Dr. Tanner's observations that Mr. Sanchez "showed respect for [her]" by apologizing for his language, and that his "demeanor was generally laid back and informal," and that he was "loosely polite and respectful during assessment . . ." AR 19, 481. The ALJ further remarked that Mr. Sanchez's "regular medical treatment records also do not document any observed mental abnormalities." AR 19.

Nevertheless, Mr. Sanchez contends that in determining that he has only mild limitations in several of the paragraph B criteria, the ALJ failed to consider specific functional limitations found by Drs. Tanner, Kerosky, Hardey, Meenakshi and Lucila. For example, Mr. Sanchez points out that Drs. Hardey, Meenakshi and Lucila found that he is at least moderately impaired in his ability to concentrate, while Dr. Kerosky found that he has moderate to marked limitations in his ability to maintain adequate sustained attention/concentration during a routine workday. *See* AR 80, 94, 399, 469. While Mr. Sanchez acknowledges that Dr. Tanner did not expressly say that he is "moderately" impaired, he nonetheless argues that her findings indicate more than mild limitation in the ability to concentrate. *See e.g.,* AR 485 (noting that Mr. Sanchez "has difficulty focusing for 15 minutes on an activity and working independently."). As discussed above, this order finds that the ALJ did not selectively rely on portions of Dr. Tanner's opinion. Moreover, it ultimately is for the ALJ to assess and weigh the evidence. Nevertheless, because the ALJ did err in failing to evaluate all of the medical source statements, the Court cannot conclude that he properly considered all of the relevant evidence in assessing whether Mr. Sanchez satisfies the paragraph B

criteria. In that respect, the ALJ erred.

## 2. Listing 12.05

"Listing 12.05 is based on the three elements that characterize intellectual disorder: Significantly subaverage general intellectual functioning; significant deficits in current adaptive functioning; and the disorder manifested before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00H.1. As noted above, listing 12.05 has two paragraphs, designated A and B, which only apply to intellectual disorder; and, a claimant need only satisfy the requirements of either paragraph A or B. *Id*. § 12.00A.2, A.3. Although Mr. Sanchez does not challenge the ALJ's finding that he does not satisfy listing 12.05 paragraph A, he contends that the ALJ's paragraph B analysis is flawed.

For listing 12.05 paragraph B, the SSA "identif[ies] significantly subaverage general intellectual functioning by an IQ score(s) on an individually administered standardized test of general intelligence that meets program requirements and has a mean of 100 and a standard deviation of 15." *Id*. § 12.00H.2.a. Specifically, paragraph B has three requirements, all three of which must be satisfied:

B. Satisfied by 1, 2, and 3 (see 12.00H):

1. Significantly subaverage general intellectual functioning evidenced by a or b:

a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

a. Understand, remember, or apply information (see 12.00E1); or

b. Interact with others (see 12.00E2); or

c. Concentrate, persist, or maintain pace (see 12.00E3); or

d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and

about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

*Id.* § 12.05B.

In determining that Mr. Sanchez did not satisfy these requirements, the ALJ acknowledged that testing by Dr. Hardey in September 2009 showed a full scale IQ of 74 and a verbal IQ of 69. AR 21. He also noted that Dr. Tanner's November 2016 evaluation revealed a full scale IQ of 68, with generally lower academic and adaptive testing scores. *Id.* Nevertheless, in concluding that Mr. Sanchez does not meet the paragraph B criteria, the ALJ noted that Dr. Tanner diagnosed only mild intellectual disability, and also noted her explanation "that the reason for [Mr. Sanchez's] adaptive and academic scores being lower may be due to mental illness and his often having others do things for him." *Id.* Mr. Sanchez acknowledges that "[m]ental illness and relying on others for managing oneself may indeed explain [Mr. Sanchez]'s lower adaptive and academic scores, as Dr. Tanner noted." Dkt. No. 25 at ECF 18; AR 486. However, he contends that it was error for the ALJ to discount his *IQ scores* on that basis. The Court agrees.

The SSA "generally presume[s] that [a claimant's] obtained IQ score(s) is an accurate reflection of [the claimant's] general intellectual functioning, unless evidence in the record suggests otherwise." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00H.2.d. Such evidence includes "a statement from the test administrator indicating that [the claimant's] obtained score is not an accurate reflection of [the claimant's] general intellectual functioning, prior or internally inconsistent IQ scores, or information about [the claimant's] daily functioning." *Id.* Only those qualified to administer such tests, agency medical and psychological consultants, and other contracted medical and psychological experts "may conclude that [a claimant's] obtained IQ score(s) is not an accurate reflection of [the claimant's] general functioning," and such a conclusion "must be well supported by appropriate clinical and laboratory diagnostic techniques . . . ." *Id.* In the present case, Dr. Tanner did not say that Mr. Sanchez's IQ score was invalid or inaccurate due to other mental illness or because others do things for him. Accordingly, the ALJ erred in suggesting that Dr. Tanner's comment is a proper basis for questioning the validity of those scores. Although the ALJ also remarked that one of Mr. Sanchez's regular treatment notes mentions only mild developmental delay (AR 21, 494), even viewing the record as

23

a whole, the Court cannot conclude that the ALJ's conclusion is supported by substantial evidence.

Moreover, insofar as listing 12.05 paragraph B incorporates the same adaptive functioning analysis applicable to listings 12.04, 12.08 and 12.11, for the reasons discussed above, the Court finds that the ALJ did not properly consider all of the relevant evidence in assessing whether Mr. Sanchez satisfies the criteria in listing 12.05 paragraph B.2.

### D.    The ALJ's Credibility Findings

In finding that Mr. Sanchez is not disabled, the ALJ determined that while his "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Mr. Sanchez's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  AR 26.

Mr. Sanchez argues that the ALJ's credibility analysis contradicts statements the ALJ made at the administrative hearing, telling Mr. Sanchez, "I think you have been very honest during this hearing, and I haven't doubted anything you said."  AR 71.  This argument is unpersuasive. In assessing the credibility of a claimant's alleged symptoms and limitations, "[a]n ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment."  *Orn*, 495 F.3d at 635 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

Mr. Sanchez nonetheless contends that the ALJ's analysis is vague and that he erred by failing to identify what specific testimony he found not credible.  In evaluating the credibility of a claimant's testimony regarding subjective symptoms, an ALJ must engage in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Id*. at 1036 (internal citations and quotation marks omitted).  The claimant is not required to show that his impairment "could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom."  *Id*. (internal quotation omitted).  "[O]nce the claimant produces objective medical evidence of an

1    underlying impairment, an adjudicator may not reject a claimant's subjective complaints based

2    solely on a lack of objective medical evidence to fully corroborate the alleged severity . . . ."

3    *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (internal citation omitted).  Unless there is

4    affirmative evidence showing that the claimant is malingering, "the ALJ can reject the claimant's

5    testimony about the severity of [his] symptoms only by offering specific, clear and convincing

6    reasons for doing so."  *Smolen*, 80 F.3d at 1282.  "General findings are insufficient; rather, the

7    ALJ must identify what testimony is not credible and what evidence undermines the claimant's

8    complaints."  *Lester*, 81 F.3d at 834.

9         Because the ALJ did not find that Mr. Sanchez was malingering, he was required to

10   provide clear and convincing reasons to justify his rejection of Mr. Sanchez's testimony about his

11   symptoms.  The Court concludes that the ALJ met this standard.

12        Citing *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090 (9th Cir. 2014), Mr. Sanchez

13   argues that the ALJ erred by failing to specify the testimony he found not credible.  To the extent

14   Mr. Sanchez suggests that the ALJ was obliged to identify precisely what statements or testimony

15   lack credibility, his reliance on *Treichler* is misplaced.  In *Treichler*, the Ninth Circuit found

16   insufficient an ALJ's cursory, one-sentence finding that the claimant's statements regarding the

17   severity of his symptoms were "not credible to the extent they are inconsistent with the [ALJ's

18   RFC] assessment."  *Id*. at 1103.  In so holding, the Ninth Circuit stated that "[a]n ALJ's vague

19   allegation that a claimant's testimony is not consistent with the objective medical evidence,

20   without any specific findings in support of that conclusion is insufficient for [judicial] review."

21   *Id*. (internal quotations and citation omitted).  The Ninth Circuit further noted that an ALJ's

22   "analysis need not be extensive," although "the ALJ must provide some reasoning in order for

23   [courts] to meaningfully determine whether the ALJ's conclusions were supported by substantial

24   evidence."  *Id*.

25        In the present matter, unlike *Treichler*, the ALJ provided far more than a mere boilerplate

26   statement that Mr. Sanchez's testimony is not credible.  The ALJ discussed the evidence and

27   explained the inconsistencies in the record that he concluded discredits Mr. Sanchez's allegations

28   and testimony regarding the severity of his symptoms.  "Factors that an ALJ may consider in

                                              25

weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn*, 495 F.3d at 636. Here, the ALJ noted that Mr. Sanchez reported engaging in "an array of daily activities, including attending to his personal care, doing household chores, watching television, playing video games and basketball, going to restaurants and the park, drawing, and sewing." AR 22. The ALJ also acknowledged that Mr. Sanchez later testified that "he does no chores and his symptoms and resulting limitations allegedly make it difficult to prepare meals, sleep, manage money, [and] shop . . ." *Id.* The ALJ noted that even if "[Mr. Sanchez's] daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to [his] medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision." AR 27. The ALJ provided a detailed summary of Mr. Sanchez's education and medical records, explaining why he found they did not fully corroborate the alleged severity of Mr. Sanchez's impairments. AR 24-26. For example, while the ALJ acknowledged that Mr. Sanchez's school records reflected issues with distraction, tardiness, and failure to complete class assignments and homework, the ALJ correctly noted that those records also reflect that incidents of immature and inappropriate behavior were "very rare," and that Mr. Sanchez "understood he gets distracted easily and requires a quiet controlled environment" and "had little difficulty completing assignments independently in [his special education] classes." AR 24, 378-79. The ALJ further noted that while Civicorps records also documented behavioral and tardiness issues, Mr. Sanchez's Civicorps counselor remembered him "as a nice, enthusiastic person who simply was unable to control his behavior/impulses." AR 24, 401, 475.

As for Mr. Sanchez's medical records, Mr. Sanchez argues that the ALJ improperly faulted him for not seeking treatment. *See Nguyen*, 100 F.3d at 1465 ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.") (internal quotations and citation omitted). While the ALJ did observe that Mr. Sanchez's "[t]reatment notes are sparse," showing only that he was prescribed medication for bipolar disorder in mid- and late 2016, the ALJ's findings were not based solely on a lack of

26

medical treatment.  Rather, the ALJ noted that observations in those medical records, e.g., describing Mr. Sanchez as "calm and cooperative," and indicating that he was able to communicate with and understand medical staff with no noted difficulties or mental abnormalities, did not support the alleged disabling effect of his impairments.  AR 24-25, 421, 426-27, 429, 434, 437, 441, 443-44, 447, 451.  While subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The Court finds that the reasons provided by the ALJ for partially discrediting Mr. Sanchez's statements and testimony are specific, clear, convincing, and are supported by substantial evidence in the record.  Because the ALJ's findings are supported by substantial evidence, this Court may not engage in second-guessing.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).  The Court therefore finds that the ALJ did not err in his assessment of Mr. Sanchez's statements and testimony.

### E.     The ALJ's RFC Determination And Step 5 Finding That Mr. Sanchez Can Work

The ALJ determined that, prior to attaining age 22, Mr. Sanchez had the RFC to perform a full range of work at all exertional levels, with the sole non-exertional limitation that he can only occasionally respond appropriately to supervisors, co-workers and the public.  AR 21.  Mr. Sanchez contends that the ALJ's RFC assessment fails to properly account for restrictions found in the medical source statements in the record.  Relatedly, Mr. Sanchez argues that the ALJ's finding that he can work, which was informed by his RFC assessment, is also not supported by substantial evidence.  Specifically, Mr. Sanchez contends that the ALJ posed hypotheticals to the vocational expert ("VE") that did not reflect the medical evidence and failed to accurately state Mr. Sanchez's level of education.[17]

---

[17] As noted above, the record indicates that Mr. Sanchez completed the 12th grade, but did not pass the California high school exit exam and did not receive a diploma.  AR 50, 382.  Mr. Sanchez contends that at the administrative hearing, the VE inaccurately stated that his record "shows 12th grade with special education . . .."  AR 64.  Although the Commissioner attributes the

In assessing a claimant's RFC, an ALJ must consider "all allegations of physical and mental limitations or restrictions," as well as "limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5. Additionally, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id*. at *7.

Because this order finds that the ALJ did not properly assess the medical source statements, the Court cannot conclude that his RFC assessment is supported by substantial evidence. On remand, the ALJ must consider all of the medical source statements and, if necessary, revisit the degree to which the opinions in those statements should be credited. Upon further proceedings on remand and consideration of the record evidence, the RFC may change. Accordingly, the Court finds it unnecessary to address the propriety of specific questions posed to the vocational expert based on the ALJ's flawed RFC.

### F. Lay Witness Statements

Mr. Sanchez contends that the ALJ failed to provide germane reasons for rejecting several lay witness statements submitted by family and friends, including Ms. Brazington, Kimberlie Lowe, Lisa Fortune, Colleen S. Congress and Rain Johnson. AR 280, 292, 321, 323, 325.

In her January 27, 2015 statement, Ms. Brazington states that Mr. Sanchez behaves like a 12-year old child; needs reminders for appointments and for personal care matters, such as bathing, shaving and washing his clothes; cannot manage money; has trouble staying on task for more than five minutes; is easily frustrated and has anger issues; and slaps himself or punches holes in walls. AR 292.

In her December 18, 2014 statement, Kimberlie Lowe, a special education teacher, states that she is Ms. Brazington's work colleague and has known Mr. Sanchez for three years. AR 280. Ms. Lowe says that she had several occasions to interact with Mr. Sanchez and found him to be a "very pleasant young man." *Id*. She says she learned about Mr. Sanchez's alleged disability

United States District Court
Northern District of California

quoted statement to Mr. Sanchez's counsel, review of the record confirms that it was a statement by the VE.

through Ms. Brazington, noting that he "struggles with academics, self-help skills, behavior problems, and attention deficits." *Id*. Ms. Lowe further notes that Mr. Sanchez lacks basic academic skills, does not stay on task for more than a few minutes, needs help with daily living skills, and has behavioral issues including slapping himself, punching holes in walls and screaming at others. *Id*.

In her October 16, 2015 statement, Lisa Fortune states that she has known Mr. Sanchez since 1997 and says that he is like a nephew to her. AR 321. Ms. Fortune notes that she has observed Mr. Sanchez's difficulties performing simple math and basic reading and writing skills, as well as problems focusing on a task for a short period of time. For example, Ms. Fortune notes that when Mr. Sanchez has done yard work for her, she had to "constantly remind him of what he was supposed to be doing" and that "[h]e cannot follow simple instructions unless they are repeated several times." *Id*. Additionally, Ms. Fortune opines that Mr. Sanchez needs supervision regarding matters "such as washing dishes or his clothes," and further notes that he "loses his temper very easily and then starts banging his head or punching holes in walls." *Id*.

In her November 10, 2015 statement, Ms. Congress states that she is a vocational specialist at Spectrum Center, a school that serves students with disabilities, adding that she has been Ms. Brazington's friend for several years and has known Mr. Sanchez for the same period. She states that Mr. Sanchez requires multiple verbal and physical prompts to complete simple tasks "such as sweeping, washing dishes, mopping floors, etc."; struggles academically; and has anger management issues and reacts by punching whatever has frustrated him, head-butting walls, or behaving inappropriately with authority figures. AR 323. Ms. Congress opines that Mr. Sanchez "need[s] continued support in all functional areas in his life." *Id*.

In his November 12, 2015 statement, Mr. Johnson, the director of Spectrum Center, states that he has worked with Ms. Brazington for over 10 years and has known Mr. Sanchez during that time. Mr. Johnson states that Mr. Sanchez has struggled to obtain and keep employment; has memory issues; cannot finish tasks he starts; and has anger and other emotional issues. In Mr. Johnson's view, Mr. Sanchez "would be unable to hold a job that did not have direct support or belong in a supported employment program" and "would need extensive and repeated training and

29

supervision in a job." AR 325.

"Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). However, an ALJ is not required to "discuss every witness's testimony on a[n] individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id*.

Here, the ALJ stated that the lay witnesses' statements "mirror that of [Mr. Sanchez] and are not entirely consistent with the record as a whole . . .." and provided several reasons for giving those statements little weight. AR 23. First, the ALJ noted that Mr. Sanchez's medical evidence "shows very little mental health treatment, but apparently ability to seek out and obtain treatment for non-mental health medical conditions, as further discussed below." *Id*. Second, the ALJ stated that while Mr. Sanchez's "[c]ognitive test scores have been low," Dr. Tanner "reasoned that they were more due to other mental illness and him being used to others doing things for him than an intellectual disability." *Id*. Third, the ALJ stated that Mr. Sanchez's "[m]edical treatment records and consultative psychological examination reports also do not document observed behavioral abnormalities as extreme as described by [his] family and family friends." *Id*.

Mr. Sanchez contends that the ALJ erred in stating that these lay witness statements "mirror" his own because the statements in question were made by different individuals who each describe their respective relationships with, and impressions of, Mr. Sanchez. All of the lay witness statements, however, are similar to Mr. Sanchez's statements with respect to the nature and alleged effects of his impairments. Accordingly, to the extent Mr. Sanchez contends that the ALJ was required to discuss each witness's testimony on an individual basis, the Court is unpersuaded.

With respect to the ALJ's stated reasons for discounting the weight given to the witnesses' statements, the Court agrees that the ALJ failed to provide a germane reason for rejecting these witness statements based on Dr. Tanner's report. As in other places in his decision, the ALJ incorrectly attributes Dr. Tanner's comment about Mr. Sanchez's adaptive and academic testing

scores to his cognitive test scores. However, the Court has found that the ALJ provided sufficient reasons for rejecting Mr. Sanchez's statements and testimony based at least in part on sparse mental health treatment and inconsistencies with the medical record. "In such a situation, the ALJ also gives germane reasons for rejecting other lay witness testimony where it is found to be similar to claimant's." *Bennet v. Colvin*, 202 F. Supp. 3d 1119, 1130-31 (N.D. Cal. 2016); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."). The Court finds no error in the ALJ's decision to give little weight to the statements by Ms. Brazington, Ms. Lowe, Ms. Fortune, Ms. Congress and Mr. Johnson.

## IV.     DISPOSITION

The Act permits courts to affirm, modify, or reverse the Commissioner's decision "with or without remanding the case for a rehearing." 42 U.S.C. § 405(g); *see also Treichler*, 775 F.3d at 1099-1100; *Garrison*, 759 F.3d 995at 1019. Because it is not clear from the record that the ALJ would be required to find Mr. Sanchez disabled if all the evidence were properly evaluated, remand is appropriate. On remand, and based on applicable law and the guidance provided in this opinion, the ALJ must properly evaluate the medical source statements, which may in turn affect the ALJ's analysis whether Mr. Sanchez's meets or equals the relevant listings, Mr. Sanchez's RFC, and whether Mr. Sanchez is able to work. It is not the Court's intent to limit the scope of the remand.

Based on the foregoing, Mr. Sanchez's motion for summary judgment is granted in part and denied in part, the Commissioner's cross-motion for summary judgment is granted in part and denied in part, and this matter is remanded for further proceedings consistent with this order. The

Clerk of the Court shall enter judgment accordingly and close the file.

**IT IS SO ORDERED.**

Dated:   March 30, 2020

VIRGINIA K. DEMARCHI
United States Magistrate Judge